IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

MARY YVONNE KENDRICK,            )
                                 )
      Plaintiff,                 )
                                 )
v.                               )   Case No. CIV-23-191-SPS
                                 )
MARTIN O'MALLEY,[1]              )
Commissioner of the Social       )
Security Administration,         )
                                 )
      Defendant.                 )

**OPINION AND ORDER**

The claimant Mary Yvonne Kendrick requests judicial review pursuant to 42 U.S.C. § 405(g) of the denial of benefits by the Commissioner of the Social Security Administration. She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kiakazi as the Defendant in this action.

engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

### Claimant's Background

Claimant was born on June 17, 1961, and was 59 years old on the alleged disability onset date. (Tr. 276, 291). She was 61 years old at the time of the administrative hearing. (Tr. 144). She has completed college and has had a longstanding work history as a teacher. (Tr. 29, 151, 281-285). Claimant alleges she has been unable to work since her amended onset date of July 11, 2021. (Tr. 276, 291).

### Procedural History

Claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 1381-85, on August 23, 2021. (Tr. 276). Her application was denied. ALJ Doug Gabbard held an administrative hearing on December 15, 2022 (Tr.144-169), and determined that Claimant was not disabled in a written decision dated December 29, 2022. (Tr. 14-35). The Appeals Council denied review, so the ALJ's written opinion became the final decision of the Commissioner for purposes of appeal.

### Decision of the Administrative Law Judge

In the December 29, 2022, decision, the ALJ made his decision at step five of the sequential evaluation. (Tr. 14-35). As relevant here, at step two, the ALJ found that Claimant had severe impairments, including colon cancer in remission, right shoulder impingement, asthma, and obesity. (Tr. 19).[3] He also found that she had several nonsevere impairments, including, post-viral

---

[3] The ALJ also noted Claimant alleged the Epstein-Barr virus as an additional impairment. (Tr. 22). He acknowledged that "consultative examining physician Dr. Harold Zane DeLaughter, D.O. diagnosed Claimant with Epstein-Barr, (Exhibit 12F/2), seemingly based on her reported that she had contracted the virus. (*See* Exhibit 12F/1). However, while the medical records indicate that her primary care provider ordered an Epstein-Barr virus antibody panel on April 23, 2021, (*see* Exhibits 4F/53 and 7F/8), there is no indication that Epstein-Barr virus was found on the laboratory studies, and no indication that the claimant received diagnosis or treatment of Epstein-Barr virus. (*See* Exhibits 4F, 5F, 6F, 7F, 8F, 9F, 10F, 12F, 13F, 14F, 15F, and 16F). As such, I find that there is insufficient evidence to establish Epstein-Barr as a medically determinable impairment." *Id*. Claimant points out that one provider mentioned a positive lab result for the Epstein-Barr virus.

fatigue syndrome and benign paroxysmal positional vertigo. (Tr. 20). Between steps three and four, the ALJ assessed Claimant's residual functional capacity (RFC), finding that she could perform light work, with frequent overhead reaching with the dominant right arm and avoidance of concentrated exposure to pulmonary irritants. (Tr. 23). At step four, the ALJ concluded that Claimant could perform her past relevant work as a teacher, and as such she had not been under a disability from the amended alleged onset date, July 11, 2021, through the date of the decision, December 29, 2022. (Tr. 29-30).

## Review

In March 2020, Claimant was diagnosed with colon cancer and underwent surgical resection of the mass in her colon. (Tr. 421, 431, 434). She followed up with an oncologist, who did not recommend any chemotherapy. (Tr. 634-36). Within two months of her surgery, Claimant was doing well, and she reported she was getting back to her normal activity levels. (Tr. 417).

Throughout 2020, Claimant continued to follow with her surgeon, oncologist, and primary care provider. (Tr. 415-16, 558-61, 628-33). She repeatedly reported she was doing well (Tr. 415, 628). Follow up testing revealed no recurrence of her cancer. (Tr. 429, 458, 590-92, 625). Claimant continued to work as a teacher after she recuperated from surgery. (Tr. 151-53). Due to the pandemic, she was initially teaching virtually, though in August 2020, she returned to work in the actual classroom. (Tr. 151-53).

---

(Pl. Br. 10 n. 7 citing Tr. 746). This reference was included in the ALJ's opinion when he cited Ex. No 16F. The reference to the virus is merely mentioned under the heading "Subjective." (Tr. 746). However, to the extent it was a formal diagnosis, the ALJ discussed all of Claimant's alleged symptoms and found her allegations were inconsistent with the overall evidence of record. Additionally, the ALJ found that "on the March 23, 2022 colorectal surgery follow-up, Claimant reported that her past medical history included emphysema. (*See* Exhibits 8F/3 and 5F/13). However, there is no indication of ongoing diagnosis or treatment of emphysema and no indication of emphysematous changes on diagnostic imaging. (*See* Exhibits 1F, 2F, 3F, 4F, 5F, 6F, 7F, 8F, 9F, 10F, 12F, 13F, 14F, 15F, and 16F). As such, I find that there is insufficient evidence to establish emphysema as a medically determinable impairment.

Claimant was diagnosed with COVID-19 in January 2021. (Tr. 570). By March 2021, she endorsed ongoing symptoms from COVID, including fatigue, weakness, and a cough. (Tr. 623). In April 2021, Claimant's primary care provider, APRN Laughlin, diagnosed her with post viral fatigue syndrome, but she did not recommend any treatment to address Claimant's ongoing symptoms. (Tr. 568). Claimant continued to work throughout the first half of 2021. (Tr. 151-53). She eventually stopped teaching in the summer of 2021. (Tr. 151-53).

Throughout 2021, Claimant continued to complain of fatigue, though she remained stable from a clinical perspective. (Tr. 618-22, 660-64, 746-50). She was alert and oriented during routine medical appointments, and she had few clinical deficits. (Tr. 620, 748-49). She told one provider that she was ambulatory and capable of all self-care, noting that she was up and about more than fifty percent of waking hours. (Tr. 620). Claimant experienced some abdominal pain, such that she was sent for a thorough workup. Testing showed mild chronic gastritis, minimal colitis, and a fatty liver, but there was no evidence of recurrent cancer. (Tr. 677, 717-19).

In October 2021, a State agency medical consultant, Mahendra Shah, M.D., reviewed Claimant's case and found that she retained the capacity to perform a full range of light work. (Tr. 177-81). In January 2022, a second State agency medical consultant, John Carey, M.D., reviewed additional evidence and affirmed the prior assessment. (Tr. 187-89).

Throughout 2022, Claimant continued to focus on issues with fatigue. (Tr. 682, 692, 717, 735, 764). Yet, she continued to be alert and oriented, with clear thinking and normal memory during various medical appointments. (Tr. 670, 683-85, 693, 707, 736, 743, 766). Notably, her medical providers did not offer any treatment recommendations for her known symptoms other than medications for insomnia. (Tr. 670, 707, 719, 743-44, 767). During her hearing in December 2022, Claimant discussed decreased energy, fatigue, and generalized body aches. (Tr. 153). She

reported that there had not been a recurrence in her cancer, noting that doctors were unsure of the etiology of her symptoms. (Tr. 153-54).

The undersigned Magistrate Judge first addresses Claimant's assertion the ALJ's RFC assessment is not supported by substantial evidence. Claimant bears the burden of showing that limitations should be included in her RFC assessment. *See Howard v. Barnhart*, 379 F.3d 945, 948-49 (10th Cir. 2004). The ALJ found that Claimant had the RFC to perform a range of light work but did not establish greater limitations. (Tr. 23-28). In reaching that conclusion, the ALJ found that Claimant's reported symptoms were inconsistent with other evidence and evaluated the medical source statements. *Id*. Further, the ALJ compared the Claimant's RFC with the physical and mental demands of her past relevant work as a teacher and found Claimant can perform this past relevant work both as actually and generally performed. (Tr. 29). The Court finds substantial evidence supports the ALJ's findings.

"Since the purpose of the [symptom] evaluation is to help the ALJ assess a claimant's RFC, the ALJ's [symptom] and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). Claimant claimed to experience debilitating symptoms, including post-viral fatigue syndrome, positional vertigo, dizziness/fainting, and insomnia. (Tr. 20). However, the ALJ found that these reported symptoms were inconsistent with other evidence. (Tr. 21). This finding is due "particular deference" by the Court. *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002). That deference is appropriate here, as the ALJ found that Claimant's reported symptoms were inconsistent with: (1) objective medical evidence, (2) her activity level, (3) the gaps in her treatment, (4) the efficacy of her conservative treatment, and (5) the lack of medication side effects. (Tr. 19-30).

Specifically, the ALJ found that objective medical evidence did not support the degree of limitation Claimant alleged. *Id. See* 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence."). The RFC is an administrative finding, based on all relevant evidence, that an ALJ makes as to the most a claimant can do despite her impairments. *See* 20 C.F.R. §§ 404.1545(a)(1), (a)(3), 404.1546(c). Here, the ALJ mentioned Claimant's various complaints, along with her multiple diagnoses (Tr. 19-20, 24-27). He noted that following treatment for colon cancer, Claimant remained cancer-free and had no recurrence of disease. (Tr. 24, 28 citing Tr. 613-38, 716-37). Nonetheless, the ALJ discussed findings from multiple medical appointments, finding that Claimant's examinations were often unremarkable. (Tr. 24-27 citing Tr. 657, 663, 669-70, 748-49, 765-66). He noted that, during the consultative examination, Claimant had limited motion of her shoulder. (Tr. 25 citing Tr. 693-94). The ALJ ultimately found that Claimant could perform a reduced range of light work, which was not an especially demanding RFC; even a wide range of light work "involves only minimally strenuous activities." *Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016).

The ALJ also considered the opinions of record. (Tr. 27). The State agency medical consultants opined that Claimant could perform a full range of light work. (Tr. 177-81, 187-89). Both consultants were able to review the available evidence of record, including records from Claimant's primary care provider, oncologist, and surgeon. (Tr. 180, 188). The ALJ addressed the State agency findings, though he ultimately found that they were only "partially persuasive." (Tr. 27). He tempered the findings, such that he concluded that additional manipulative and environmental restrictions were needed given the objective evidence of record, including clinical deficits exhibited during the consultative examination. (Tr. 27). Notably, there was no opinion of

record from one of Claimant's clinicians, nor was there any opinion that Claimant could not sustain work activity.

Regarding Claimant's activity level, the ALJ found that her activities of daily living were inconsistent with her reports of disabling symptoms. (Tr. 19-30). The ALJ noted that Claimant lived alone and was able to take care of herself. (Tr. 28, 565, 572, 618, 623, 628, 683, 735). Prior to her amended alleged disability onset date, but after her colon cancer resection surgery, she admitted working outside on her yard mowing and weedeating. The ALJ pointed out that just prior to her amended onset date, but well after her diagnosis of COVID-19, she was able to travel from Oklahoma to Alaska and back to see her daughter and grandchild, during which she reported she stopped all her medications. (Tr. 28, 746). He mentioned that, throughout the relevant period, she remained independent and was able to drive herself back and forth to doctor's appointments. (Tr. 28, 618, 717, 735). Finally, he noted that during one appointment in August 2021, Claimant mentioned that she was up and about more than fifty percent of each day. (Tr. 28 citing Tr. 620). *See Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (ALJ reasonably found a claimant's description of her daily activities did not indicate significant limitations, where, among other things, the claimant could care for herself, her home, drive, and engage in activities outside of her home).

Claimant suggests the ALJ provided a "defective analysis" of her activities of daily living. In part, she points to the fact that the ALJ mentioned activities that occurred prior to her amended alleged onset date in July 2021. (Pl. Br. 14). The ALJ was entitled to mention and discuss any relevant evidence of record. Social Security Ruling 18-01p, 2018 WL 4945639 (Oct. 2, 2018) (noting that we should consider all evidence available in the case record and develop a complete medical history of at least the preceding twelve months for any case); *see also* (HALLEX I-2-6-

58(A) ("Evidence dated within 12 months of the alleged onset date under a Title II application for disability insurance benefits" is an example of evidence that may be material to a claim for disability.).

Here, Claimant was diagnosed with COVID-19 in January 2021, seven months prior to her amended alleged onset date. (Tr. 570, 623). By March 2021, she reported ongoing issues with cough, body aches, and fatigue, all of which she attributed to her prior diagnosis of COVID-19. (Tr. 570). Yet, she still traveled across country, to Alaska, in the summer of 2021. (Tr. 746). While some of Claimant's activities did occur prior to the relevant period—i.e., after the amended alleged onset date—they did occur after the onset of her symptoms. And to the extent that Claimant suggests that her condition worsened over time, the record does not support a worsening of her condition at the time of her amended alleged onset date. Rather, she reported that she amended her alleged onset date to July 2021 since that was the time she stopped working. (Tr. 153).

Claimant contends the "sporadic performance" of activities like performing a few household tasks "does not establish that a person is capable of engaging in substantial gainful activity," *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987), but an ALJ may consider such activities when, as here, they undercut a claimant's reported symptoms. *See Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010). The Tenth Circuit has recognized that an ALJ may consider similar activities when discounting a claimant's reported symptoms. *See id*. (finding that an ALJ reasonably determined a claimant's description of her daily activities did not indicate significant limitations, where the claimant could care for herself, her home, and her children, and also drive, shop, handle finances, garden, visit friends, and go out to eat). Here, Claimant lived alone, took care of herself, and drove herself to numerous appointments, all while complaining of debilitating fatigue. These are more than sporadic activities, and they suggest that Claimant retained

considerable functional ability despite her fatigue. Additionally, the ALJ did not rely on Claimant's activities of daily living alone to deny her claim. Rather, he used this as one factor that negated her allegations of debilitating symptoms. Therefore, the Court rejects Claimant's argument that the ALJ did not sufficiently evaluate her subjective complaints.

Finally, Claimant contends the ALJ did not give sufficient deference to the medical evidence. A review of the record, however, including the medical opinions and prior administrative medical findings support the ALJ's assessment of Claimant's RFC. Regarding Claimant's physical limitations, State agency medical consultants Drs. Shah, and Carey found that she had abilities consistent with the full range of light work. (Tr. 172-183, 184-190). The ALJ found that these prior administrative medical findings were partially persuasive in that Claimant was more limited—the ALJ limited her to a range of light work. (Tr. 27-30). *See* 20 C.F.R. § 404.1520c(b). Specifically, the ALJ found:

> The limitation to "light" work is supported by the evidence cited, including the consideration of the claimant's obesity, and is consistent with other evidence in the file, including, but not limited to, the claimant repeatedly being in no acute distress and exhibiting within normal limits examination findings. I find the prior administrative medical findings are not entirely consistent, however, in that they did not adequately account for the right shoulder impingement demonstrated on May 5, 2022, consultative physical examination, which I find warrants limitation to frequent overhead reaching with her right dominant arm. She testified that she uses an inhaler and breathing machine as needed for her asthma, and she was rarely, if ever, noted to exhibit any abnormal respiratory examination findings at baseline. As such, I find she must avoid concentrated exposure to dusts, odors, gases, fumes, and other pulmonary irritants.

(Tr. 27). No source opined that Claimant experienced greater physical limitations than the ALJ assessed.

## Conclusion

In summary, as noted by the Commissioner, Claimant was diagnosed with colon cancer in early 2020. After a few months of treatment, including surgery, she returned to full-time work as a teacher. Almost a year after her cancer diagnosis, Claimant contracted COVID-19. For several months, she complained of ongoing symptoms, though she was not referred for much treatment. She was only prescribed medications to manage her hypertension, asthma, and insomnia. She remained stable on examinations, and she continued to drive and take care of herself.

Two impartial State agency medical experts agreed that Claimant could perform a full range of light work. However, after reviewing the record, the ALJ tempered those findings and concluded that Claimant could only perform a limited range of light work with additional manipulative and environmental restrictions. He considered Claimant's allegations—particularly concerning an inability to sustain full time work—noting that they were not supported by treatment records and other medical evidence, and he found that Claimant could perform her past work as a teacher. The Court finds that correct legal standards were applied by the ALJ, and substantial evidence supports the ALJ's finding that Claimant could perform her past relevant work as a teacher.

Accordingly, the decision of the Commissioner is hereby AFFIRMED.

**IT IS SO ORDERD this 8th day of May, 2024.**

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**